# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDER PALMISANO, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ANDREW M. SAUL, | : | No. 20-cv-00330-RAL |
| Commissioner of Social Security | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**RICHARD A. LLORET**  **April 27, 2021**
**U.S. MAGISTRATE JUDGE**

    Alexander Palmisano ("Mr. Palmisano" or "Plaintiff") was denied Social Security benefits by the decision of an Administrative Law Judge ("ALJ"). Mr. Palmisano contends that the ALJ's unfavorable decision was reached in error. Pl. Br. at 6–17 (Doc. No. 22). Specifically, Mr. Palmisano argues that the ALJ erred by (1) erroneously assigning little weight to the opinions of a consultative psychologist and a consultative physician regarding Mr. Palmisano's disabilities and (2) failing to incorporate all of Mr. Palmisano's "credibly established limitations" in her hypothetical question to the vocational expert. *Id*. The Commissioner of Social Security ("Commissioner") responds that the ALJ's decision was supported by substantial evidence. Def. Br. at 7–15 (Doc. No. 23).

    After careful review, I agree with the Commissioner and find that the ALJ's decision is supported by substantial evidence. For the reasons set forth below, I deny Mr. Palmisano's request for review and affirm the final decision of the Commissioner.

## PROCEDURAL HISTORY

On February 17, 2017, Mr. Palmisano filed a claim for supplemental security income ("SSI") under Title XVI of the Social Security Act. Pl. Br. at 2. His application was initially denied on November 3, 2017. *Id.* On November 16, 2017, Mr. Palmisano timely requested a hearing. *Id.* On October 26, 2018, an Administrative Law Judge ("ALJ") held the hearing. R. 28–47. On January 11, 2019, the ALJ issued a decision denying Mr. Palmisano benefits. R. 10–27. On February 26, 2019, Mr. Palmisano requested that the Appeals Council review the ALJ's decision. R. 116–19. The Appeals Council subsequently denied Mr. Palmisano's request for review. R. 1–6. This appeal follows.

## FACTUAL BACKGROUND

Alexander August Palmisano, Jr. was born in May of 1962. R. 34. He has a high school equivalent education (GED), and no past relevant work. R. 23, 35. Mr. Palmisano suffers from a combination of impairments including disorders of the back, a history of status-post traumatic brain injury with neurocognitive disorder and headaches, depression, an anxiety disorder, and post-traumatic stress disorder (PTSD), all of which the ALJ found to be severe. R. 15. A consultative psychologist and consultative physician provided opinions regarding the nature and severity of Mr. Palmisano's impairments, which Mr. Palmisano argues would compel a conclusion that he is disabled if the ALJ found the opinions to be credible. Pl. Br. at 3. However, the ALJ assigned little weight to the opinions of these consultative physicians and issued an opinion finding that Mr. Palmisano was not disabled. *Id.*; R. 22. In reaching this decision, the ALJ made the

following findings of fact and conclusions of law pursuant to a five-step sequential evaluation.[1]

At step one, the ALJ concluded that Mr. Palmisano had not engaged in substantial gainful activity ("SGA") since the application date of February 16, 2017. R. 15.

At step two, the ALJ determined that Mr. Palmisano had the following severe impairments: disorders of the back, a history of status-post traumatic brain injury with neurocognitive disorder and headaches, depression, an anxiety disorder, and post-traumatic stress disorder (PTSD). R. 15. The ALJ found Mr. Palmisano's allergic rhinitis, insomnia, sebaceous cyst, lung nodules, hemorrhoids, benign prostatic hyperplasia, and asthma to be non-severe impairments. *Id*. Furthermore, the ALJ determined that Mr. Palmisano's claims of bipolar affective disorder, a reading disorder, and a knee disorder were not medically determinable impairments. *Id*.

At step three, the ALJ compared Mr. Palmisano's severe impairments to those contained in the "Listings."[2] The ALJ concluded that Mr. Palmisano's impairments, singly or in combination, did not meet or equal the criteria of any of the Listings. R. 15–17. Specifically, the ALJ concluded that none of Mr. Palmisano's impairments met the

---

[1] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his or her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his or her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[2] The regulations contain a series of "Listings" that describe symptomology related to various impairments. See 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work he or she may have performed in the past. *Id*.

criteria of Listings §§ 1.04 (relating to spinal disorders), 12.02 (relating to neurocognitive disorders), 12.04 (relating to depressive disorders), 12.06 (relating to anxiety disorders), or 12.15 (relating to trauma disorders).

At step four, the ALJ assessed Mr. Palmisano's residual functional capacity ("RFC"), or "the most [Mr. Palmisano] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545, 416.945. After a review of the objective medical evidence and subjective medical opinion evidence, the ALJ concluded that Mr. Palmisano retained the capability to perform "medium"[3] work, subject to certain limitations. R. 18–23. These restrictions included:

> He must avoid more than frequent exposure to vibration and hazards, including moving machinery and unprotected heights. He is limited to unskilled work with routine, repetitive tasks performed in a low stress environment (defined as no frequent changes in the work setting) and occasional interaction with the public and supervisors.

R. 18.

At step five, the ALJ identified three representative occupations that exist in significant numbers in the national economy that Mr. Palmisano could perform considering his age, education, work experience, and RFC. R. 23–24. These occupations were dishwasher, drier attendant, and cleaner. R. 24.

Based on the above, the ALJ ultimately found that Mr. Palmisano was not disabled. R. 24.

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 CFR § 416.967(c).

## **DISCUSSION**

**A.     Standard of Review**

My review of the ALJ's decision is deferential; I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing to *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing to 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Evidence is substantial where it consists of "more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. See 42 U.S.C. § 405(g). I may not re-weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to "plenary review." *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must

determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (Katz, J.) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

### B. The ALJ did not err in assigning little weight to the opinions of Dr. Patrone, Psy.D. and Dr. Zibelman, M.D.

Mr. Palmisano's first and second claims challenge the ALJ's step four analysis. *See* Pl. Br. at 6–14. Specifically, Plaintiff alleges that the ALJ erroneously assigned little weight to the medical opinions of consultative psychologist Christopher Patrone, Psy.D., and consultative physician Mark Zibelman, M.D. in determining Mr. Palmisano's RFC. *Id*. Further, Plaintiff argues that, had the ALJ "properly" credited these opinions, Mr. Palmisano "would have been found disabled." *Id*. at 8.

An ALJ is not bound by the opinions of a non-treating physician in making a disability determination, as these opinions are afforded less weight than those of a treating physician. *Mansfield v. Colvin*, No. CV 16-2003, 2017 WL 4227230, at *6 (E.D. Pa. 2017) (Kearney, J.) (citing 20 C.F.R. §§ 404.1527, 416.927). A consultative examiner is considered a non-treating medical source. *Id*.

#### 1. *Dr. Patrone's opinion was contradicted by the record.*

The ALJ assigned little weight to the opinion of Dr. Patrone, reasoning "this opinion is not supported by the examination findings of record, including repeated examinations by family medical provider. . . It is also not supported by the course of medical treatment, the lack of mental health treatment, or the claimant's own activities

6

of daily living." R. 22. Specifically, the ALJ referenced numerous examinations during which Mr. Palmisano's neurological and psychiatric functioning were found to be normal. R. 20 (citing 7F/5-8, 14-17; 11F/2, 11, 17, 20). In addition to subsequent examinations which tended to show that Mr. Palmisano was not limited by his impairments to the extent alleged, the ALJ noted that Mr. Palmisano has been receiving the same dosage of Valium from his primary care physician (PCP) since April 2017, with no modifications or additions to his mental health treatment since that time. R. 21.

The ALJ also relied on the opinion of State Agency psychological consultant Dr. Gavazzi. *Id.* In his report, Dr. Gavazzi opined that Mr. Palmisano has "moderate limitations in regards to his ability to interact with others; concentrate, persist, and maintain pace; and adapt and manage oneself; and a mild limitation with regard to his ability to understand, remember, or apply information." *Id.* (citing 1A/6-7). In particular, the ALJ found Dr. Gavazzi's opinion as to Mr. Palmisano's RFC to be "consistent with the record as a whole," as Dr. Gavazzi opined, "that the claimant has moderate limitations in regards to the abilities to understand, remember, and carry out detailed instructions; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting." R. 22. (citing 1A/10-13). According to the ALJ, this opinion, along with the medical records from Mr. Palmisano's PCP and evidence obtained at the hearing level, formed the basis of her assessment of Mr. Palmisano's RFC. *Id.*

Plaintiff alleges that the ALJ's findings in these respects disregard Mr. Palmisano's course of medical treatment for his psychiatric impairments prior to April of 2017 and are inconsistent with the findings of Dr. Patrone's examination. *See* Pl. Br.

7

at 9–11. However, I am not tasked with re-weighing the evidence considered by the ALJ, but rather with determining whether the ALJ's decision to assign little weight to Dr. Patrone's opinion was supported by "more than a mere scintilla" of evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). After considering the medical evidence from Mr. Palmisano's PCP, a State Agency psychological consultant (Dr. Gavazzi), and a consultative psychologist (Dr. Patrone), the ALJ determined that all of Mr. Palmisano's mental health impairments are adequately accounted for by limiting him to "unskilled work with routine and repetitive tasks performed in a low stress environment, and with no more than occasional interaction with the public and supervisors." R. 21.

Evidence obtained from a treating physician's course of mental health treatment, a State Agency psychological consultant, and Plaintiff's testimony at the hearing stage are all proper sources that the ALJ considered in evaluating Dr. Patrone's opinion. Accordingly, I find that the ALJ's decision to assign little weight to the evidence of consultative psychologist Dr. Patrone was supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing to *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

    2. *Dr. Zibelman's opinion was contradicted by the record.*

Plaintiff similarly complains of the ALJ's decision to assign little weight to the opinion of consultative physician Dr. Zibelman, M.D. *See* Pl. Br. at 12–14. Specifically, Mr. Palmisano claims that the ALJ erroneously rejected Dr. Zibelman's opinion while relying on her own "lay" opinion. Pl. Br. at 14. On review, Plaintiff's claim fails because the ALJ's decision to discount Dr. Zibelman's opinion was supported by substantial evidence.

8

In affording little weight to the opinion of Dr. Zibelman, the ALJ noted that the additional limitations placed on Mr. Palmisano's RFC by the consultative physician were "not supported by the physical examination findings of record, including repeated examinations by the claimant's family medical provider. . . [t]hey are also not supported by the course of medical treatment and radiology reports." R. 22. Included in the physical examinations of record was the examination by State Agency medical consultant Carl Ritner, D.O., which the ALJ afforded "significant weight." R. 21. Dr. Ritner opined that the claimant is limited to "a reduced range of medium work." *Id.* (citing 1A/9-10). Dr. Ritner's assessment of Mr. Palmisano's RFC, along with the physical examinations of record and other medical treatment reports, served as the ALJ's basis in determining Mr. Palmisano's RFC. *See id.*

The ALJ cited to numerous pieces of evidence in the record to justify her decision. In particular, she referred to objective tests which have shown "minimal to no abnormalities" in Mr. Palmisano's back, and considered that his "musculoskeletal system was normal on physical examination with every visit with his [PCP]." R. 20 (citing 7F/5-8, 14-17; 11F/2, 11, 17, 20). The ALJ did, however, find that Mr. Palmisano has some abnormalities including an antalgic gait, a reduced squat, and a positive straight leg raise on the right at 50 degrees supine and 10 degrees sitting. *Id.* (citing 5F/4). Despite these impairments, Mr. Palmisano has remained on the same dosage of Naproxen throughout the relevant period and has not treated with an orthopedist or other specialist, received physical therapy, received injections, or sought surgical intervention. R. 20–21.

In addition to the evidence cited by the ALJ from the course of treatment prescribed to Mr. Palmisano by his PCP, the ALJ noted that Plaintiff is able to use public

9

transportation—according to his own hearing testimony—and can ambulate reasonably without the use of a cane despite his self-reported reliance on one. R. 21. Evidence for these findings came from Plaintiff's own testimony and numerous visits with his PCP. *Id.* (citing 1F/105; 5F/1; 6F/3; 11F/2, 5, 8, 14, 17, 20). Furthermore, Dr. Zibelman's own examination indicated that Mr. Palmisano needed "no help getting changed for exam or getting on and off exam table," was able to "rise from chair without difficulty," "can walk on heels and toes without difficulty," and "used no assistive device." R. 575. Notably, on the check-box portion of the opinion, Dr. Zibelman indicated that Mr. Palmisano does not require the use of a cane to ambulate. R. 579. Accordingly, the ALJ found that all limitations stemming from Mr. Palmisano's severe back impairments "are accounted for by the limitations in the RFC to medium work, along with additional postural and environmental limitations." *Id.*

Based on her detailed review of the objective medical evidence, the ALJ found Dr. Zibelman's opinion unsupported by the record and afforded it limited weight. I find substantial evidence supports the ALJ's findings relating to the weight given to medical evidence and Dr. Zibelman's opinion as a consultative examiner.

    **C.**    **The ALJ properly considered the vocational expert's testimony.**

Plaintiff argues that the ALJ erred in not affording more significant weight to Dr. Zibelman's and Dr. Patrone's opinions and, consequently, in not incorporating into the hypothetical question these providers' findings that Plaintiff experienced (1) a marked limitation in his ability to interact with supervisors, and (2) a lumbosacral spine disorder which limited him to no more than light exertion level. Pl. Br. at 15–16. I find that the ALJ's hypothetical incorporated all of Mr. Palmisano's impairments. Therefore, it was a proper hypothetical, and I will deny this claim for relief.

The Third Circuit has found that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). When posing a hypothetical question to a vocational expert the ALJ's question "must reflect *all* of a claimant's impairments." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (emphasis added).

Here, the ALJ posed three hypothetical questions. The first question was as follows:

> I'd like you to assume a hypothetical individual the same age and education as the claimant. Assume this individual has no past work. Assume this individual can perform medium exertional work and is limited to unskilled work with routine, repetitive tasks, with occasional interaction with the public and supervisors. Would there be any unskilled occupations available for such an individual?

R. 43. Based upon that hypothetical, the vocational expert found that Mr. Palmisano could maintain jobs as a dishwasher, drier attendant, and machine feeder. *Id*. The ALJ continued and asked a second hypothetical:

> [N]ow I'd like you to again assume a hypothetical individual the same age and education as the claimant with no past work. Assume this individual again can perform a range of medium exertional work. Assume the individual can frequently balance, stoop, kneel, crouch, crawl and climb ramps, stairs, ladders, ropes and scaffolds, must avoid more than frequent exposure to vibration and hazards including moving machinery and unprotected heights and again assume the individual would be limited to unskilled work

> with routine, repetitive tasks and occasional interaction with
> the public and supervisors.

R. 44. The vocational expert testified that Mr. Palmisano could still maintain jobs as a drier attendant and dishwasher, but could not maintain a job as a machine feeder. *Id*. The vocational expert further testified that Mr. Palmisano could maintain a job as a cleaner. *Id*. The ALJ asked a third hypothetical, integrating all the limitations from her second hypothetical but adding a few more restrictions:

> Assume this individual has the same capacity as my last
> hypothetical but is more limited in that the routine repetitive
> tasks would be performed in a low stress environment and
> I'm defining that as no frequent changes in the work setting.
> Would there be any unskilled occupations available for such
> an individual?

R. 45. The vocational expert testified that under these limitations, Mr. Palmisano could still perform the three positions named in the second hypothetical—drier attendant, dishwasher, and cleaner. *Id*.

I have already addressed the factual bases underlying this argument and found that the ALJ properly assessed Plaintiff's mental and physical impairments based on substantial evidence of record. The ALJ noted that Mr. Palmisano's impairments included that he must avoid frequent exposure to vibration and hazards (including machinery and unprotected heights), that he was limited to unskilled work with routine, repetitive tasks, and limited to occasional interaction with the public and supervisors. R. 18. The ALJ found these impairments were supported by specific evidence in the record. The ALJ's third hypothetical incorporated all of Mr. Palmisano's impairments, and this was the hypothetical the ALJ ultimately relied on. R. 24. Mr. Palmisano proffers two additional impairments that the ALJ should have used in her hypothetical and cites the

opinions of Doctors Zibelman and Patrone as support for these impairments. But, as explained above, the ALJ's decision to discount these providers' opinions was supported by substantial evidence. Therefore, there was no error in the ALJ's decision to rely on the third hypothetical given to the vocational expert because it adequately reflected all of Mr. Palmisano's impairments. *See Nestor v. Colvin*, No. 13-cv-01098, 2014 WL 4851641, at *6 (E.D. Pa. Sept. 30, 2014) (Gardner, J., approving and adopting report and recommendation of Lloret, J.) (finding no error with a hypothetical to a vocational expert when the ALJ found that plaintiff's proposed limitations were unsupported by the record); *see also Strogish v. Astrue*, No. 08cv757, 2008 WL 5263350, at *14 (W.D. Pa. Dec. 16, 2008) (finding that an ALJ's hypothetical was accurate when it did not include plaintiff's proposed limitations because the ALJ had appropriately discounted these limitations). I will deny Mr. Palmisano's claim regarding the ALJ's hypothetical.

## CONCLUSION

Based upon the discussion above, I find that Mr. Palmisano is not entitled to relief on any of his claims. The ALJ's weighing of consulting physicians' opinions was supported by substantial evidence and the ALJ asked an appropriate hypothetical to the vocational expert. Therefore, I deny Mr. Palmisano's request for review and affirm the final decision of the Commissioner.

**BY THE COURT:**

*s/Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**